COCA COLA BOTTLING CO. v. HECK-
MAN.

No. 12290.

Court of Civil Appeals of Texas. Dallas.
Jan. 22, 1938.

Head, Dillard, Maxey-Freeman & Mc-Reynolds, of Sherman, for appellant.

Webb & Webb, of Sherman, for appellee.

YOUNG, Justice.

This was a suit for damages brought by appellee, Starine Heckman, suing by her father and next friend, C. H. Heckman, against appellant, Coca Cola Bottling Company, in a district court of Grayson county. Its history throughout the trial court is set forth in appellant's brief, where it is stated: "In her (appellee's) first amended original petition, on which the case was tried, she alleged that on the 19th day of June, A. D. 1934, she purchased at a lunch room in Sherman, Texas, a bottle of coca cola which contained a cockroach. That she undertook to drink the coca cola and swallowed all or a portion of the cockroach, which caused her violent illness. That it was poisonous and went into and poisoned all the nerves, tissues in and around her throat, stomach and other organs. That prior thereto she was well and healthy, had a good appetite and could enjoy and digest her food. That since said time she has been sick and disabled and unable to enjoy and digest her food. It was alleged that the defendant manufactured and bottled said bottle of coca cola and sold the same to the party from whom she purchased same, and was guilty of negligence, (a) in failing to properly inspect said bottle before putting the same on the market, (b) in failing to remove said cockroach from same before placing same on the market, and (c) in bottling the coca cola with the cockroach in it. That each and all of said acts proximately produced the injuries complained of, the amount of the damage alleged being fifteen hundred ($1500.00) dollars. Defendant answered by general demurrer and general denial."

The case was tried to a jury. At the close of the testimony, defendant's motion for an instructed verdict was refused. In response to given issues, the jury found: (1) That the defendant failed to properly inspect the said bottle of Coca Cola before putting it on the market; (2) that such failure on the part of the defendant was negligence and (3) was a proximate cause of injury sustained by plaintiff; (4) that defendant placed on the market the bottle of Coca Cola in question with a cockroach in it; (5) in so doing, defendant was guilty of negligence (6) which was a proximate cause of plaintiff's injury; (7) that plaintiff had been damaged in the sum of $500. Upon judgment on the verdict, and refusal of a new trial, appellant here asks that the cause be reviewed under various assignments of error; the first being to the denial of its request for peremptory instruction by the trial court.

The essence of appellant's proposition under this assignment is that there was material variance in appellee's proof under the allegations: (a) That the plaintiff, Starine Heckman, purchased a bottle of Coca Cola which contained a cockroach, undertook to drink the same and swallowed all or a portion of said cockroach, which caused her violent illness; (b) that it was poison; and (c) went into and poisoned all the nerves and tissues in and around her throat, stomach, and other organs.

The testimony amply supports the jury finding that the Coca Cola bottle in ques-

tion contained this undesirable ingredient, to wit, a cricket or cockroach, at the time appellee drank therefrom; and we can further properly find that appellee drank all of the fluid, or at least had in her mouth the last swallow of the fluid in the bottle, before she discovered the presence of the bug. Excerpts from the testimony of appellee as to the discovery of such objectionable element and its consequent effect upon her is here quoted:

"Q. In drinking the coca cola did you drink anything else coming out of the bottle except the coca cola? A. The cockroach.

"Q. Did you get any of that in your mouth? A. Yes, sir, it was right up at the top of the bottle.

"Q. Did that make you sick? A. Yes, sir.

"Q. Have you been able to drink any coca cola since then? A. No, sir. * *

"Q. How much of that cockroach that you drank—did any of it get in your mouth or did it stop up in the bottle or go back in the bottle, or what happened to it? A. It came up to the top of the bottle, even, and I could taste the legs and then I took the bottle away and spit it out, but it did not come out of the bottle.

"Q. Did you feel a part of it with your tongue? A. Yes. * * *

"Q. And of course you didn't see this thing in the bottle until after you had finished? A. Until after I had finished.

"Q. You held the coke up and it ran down into the neck of the bottle? A. Well, yes.

"Q. Whatever was in there ran down into the neck of the bottle? A. Yes.

"Q. And it touched your lips? A. Yes.

"Q. Didn't any of it get out of the bottle in touching your lips, did it? A. No.

"Q. Well, whatever it was you had in your mouth at that time, you spat it out? A. Yes, sir."

The further testimony of appellee, in substance, was that she was employed with a Sherman department store at the time, as sales girl; that she had purchased a Coca Cola drink in connection with lunch about 6 o'clock in the evening, in company with other girl employees, all of whom were returning to the store for extra work; that later in the evening, before she went home from the store,

she drank a bottle of cherry soda, the next day taking some peptonated calomel for billiousness, being already sick, however, following her previous condition of nausea. That she continued to work in the store until May, 1935, losing no time except one-half day about three weeks later, after taking calomel. That she had required no medical treatment during all of such time, and no vomiting resulted from the occurrence in question. Dr. Swofford, a witness for appellee, testified, in substance, that in the absence of vomiting at the time, the effect of drinking the liquid from a Coca Cola bottle, and the discovery of a bug or cockroach therein, would cause more or less nausea and some shock to the sympathetic and nervous system; no physical damage, but a nervous and psychological result, upsetting the digestive organs to the extent of nausea, and disturbing their functioning, more or less, at times; the latter-described condition being temporary.

Appellee's allegations as to the occurrence and resulting damages were broad and general, but sufficient against appellant's general demurrer. Appellee testified that she was made sick and, ordinarily, one may recover for sickness caused through fault of another. As stated in Words & Phrases, Vol. 6, Third Series, page 1100: "'Sickness' is any morbid condition of the body which for the time being hinders and prevents the organs from normally discharging their several functions. It is any affection of the body which deprives it temporarily of the power to fulfill its usual functions. Martin v. Waycross Coca-Cola Bottling Co., 18 Ga. App. 226, 89 S.E. 495, 496."

The fact that the physical symptons of her experience were merely conditions of recurring nausea might minimize the damage recoverable, but would hardly bring the case under the maxim "de minimus non curat lex." An issue of actionable damages was raised by pleading and proof. This assignment is overruled.

Appellant's second assignment complains of the refusal of the trial court to give the following issue: "Could the defendant, in the exercise of ordinary care have reasonably anticipated that this plaintiff, Starine Heckman, or someone similarly situated, would sustain damage or injury from the drinking of the bottle of coca cola in question, from mental shock but without any physical injury?"

The affirmative facts involved in the above issue were not pleaded by appellant in defense of appellee's cause of action, and we can briefly dispose of the question by reference to the recent case of Merchants Bldg. Corp. v. Adler, Tex.Civ.App., 110 S.W.2d 978, 981, and our ruling on a substantially similar assignment. Here the court's definition of "proximate cause" properly included the element of "foreseeableness" and the fact issues, Nos. 3 and 6, sufficiently presented to the jury, the elements complained of. The cases in support of appellant's position are not regarded as in point; the principle of law being similar to that presented in Texas Indemnity Ins. Co. v. Allison, Tex. Civ.App., 75 S.W.2d 999, 1000, where it was held, "the jury [*in a compensation case*] (italics ours) should have been permitted to answer as to partial incapacity, its inception and duration, regardless of the jury's finding as to the existence of total permanent incapacity." We overrule this assignment.

Assignments Nos. 3, 4, 5, and 6 will be considered together, relating as they do to special issue No. 7, and the court's instruction thereon as to the measure of damages. Such issue and instruction are here quoted:

"What amount of money, if any, as a present cash payment, will reasonably and fairly compensate plaintiffs for the injuries, if any, sustained by plaintiff Starine Heckman?

"You are instructed that in determining your answer to the foregoing question you will only take into consideration such mental anguish, if any, and such physical pain, if any, Starine Heckman has suffered from the date of the accident in question to this date, which resulted solely from drinking the bottle of coca cola in question, and such mental anguish she will suffer in the future which resulted solely from drinking the bottle of coca cola in question."

Said assignments complain of the above instruction, because (a) it permits the jury to take into consideration mental anguish, when there is no allegation in plaintiffs' pleading that mental anguish was suffered; (b) nor was there evidence introduced on the trial showing or tending to show that the plaintiff in fact suffered mental anguish; (c) it permitted the jury to take into consideration such mental anguish as is reasonably probable that the plaintiff will suffer in the future, when there is no pleading of future mental anguish as an element of damage; and (d) it authorizes the jury to take into consideration physical pain, if any, suffered by the plaintiff, there being no allegation or evidence that she suffered physical pain as a result of drinking the Coca Cola in question.

In her trial pleadings, appellee alleged: "That plaintiff undertook to drink said coca cola and swallowed all or a portion of said cockroach, which caused her violent illness. * * * That at said time plaintiff was a well, healthy, able-bodied girl. That since said time she has been sick and disabled; and that before she was served said cockroach as aforesaid, she had a good appetite, could enjoy her food and digest same; that since said time she is unable to enjoy and digest her food. That this condition is permanent."

There were no special exceptions to the foregoing allegations, and we think, as appellee logically urges, she would be permitted to prove, under allegations of "violent illness," any illness or ailment—nervous, physical or otherwise—that might be caused from drinking the Coca Cola containing the alleged cockroach. Appellee's testimony previously outlined was that she was rendered sick from drinking the beverage. It will be noted that the issue in question related to compensation, if any, for injuries already sustained, and was a proper inquiry, although the instruction permitted the jury to take into consideration future mental anguish in making their award. It will be unnecessary to take action on the assignments asserting insufficiency of pleading and evidence to justify an issue on compensation for past physical pain and mental anguish, for the reason that we think the court's inclusion of future mental anguish in the damage issue was clearly subject to the objection made, requiring a remand of this cause. An allegation that such injuries are permanent is insufficient. Houston & T. C. R. Co. v. Lindsey, 51 Tex.Civ.App. 67, 110 S.W. 995; Merchants Bldg. Corp. v. Adler, supra; 13 Tex.Jur. 358, Damages, § 203, and cases there cited. The damage question being proper in form, and there being virtually no evidence to which the jury could apply this erroneous part of the instruction, we doubt whether the jury gave same any material consideration; but this we cannot presume. Eastern Texas Electric Co. v. Baker, Tex.Com.App., 254 S.W. 933; American Produce Co. v. Gon-

zales, Tex.Com.App., 1 S.W.2d 602; Kansas City, M. & O. Ry. v. Foster, Tex. Civ.App., 38 S.W.2d 391. Nor can the error above adverted to be cured by remittitur, inclined as we may be to finally dispose of this case by requiring of appellee such statutory refund. As stated in Dickey et al. v. Jackson, Tex.Com.App., 1 S.W.2d 577, 578, "We do not have a case wherein the taint of the error may be allocated definitely and, so, avoided through remittitur [citing many authorities], but, the rather, one within the condemnation of the rule that curative remittitur ought not be permitted 'when the error may have had an influence upon the general verdict'" (citing many other authorities). See, also, Texas Pac. Coal & Oil Co. v. Grabner, Tex.Civ.App., 10 S. W.2d 441, 445; Allen v. Denk, Tex.Civ. App., 87 S.W.2d 303.

Appellant's seventh assignment of error is disposed of under our treatment of the above assignments.

Appellant's assignments Nos. 8, 9, and 10 will now be grouped and examined. Issue No. 1 in the court's charge reads: "Do you find from a preponderance of the testimony that the defendant company failed to properly inspect the said bottle of coca cola before putting it on the market?" Issues Nos. 2 and 3 were properly conditioned on affirmative answer to the above-quoted question, and required findings by the jury on "negligence" and "proximate cause," as defined in said charge. These assignments urge error in the submission of said issue No. 1, because (1) it was conclusively shown that appellant employed competent inspectors while bottling said products, and that, in the process of cleaning the bottles and bottling the Coca Cola, the same was inspected at least four times by said inspectors; there being no evidence that any inspector was either negligent or incompetent; that from the time the bottle entered the soaker until it had been filled and capped, it was not touched by human hands; nor any evidence showing or tending to show negligence on the part of appellant, either with regard to the machinery or processes employed; and (2) that said issue placed a higher duty upon said appellant than imposed by law, in using the term "properly inspect," in that it was obligated only to exercise ordinary care in the manner of inspection and process of bottling; (3) there was no legal definition of "properly inspect," leaving the jury without guidance to interpret what would constitute proper inspection.

Notwithstanding the evidence as to the efficiency and up-to-date nature of appellant's equipment, plus its precaution in inspection, we cannot overlook the bug in the bottle from which appellee drank. Coca Cola Bottling Co. of Fort Worth v. Smith et ux., Tex.Civ.App., 97 S.W.2d 761; see annotation of cases following O'Brien v. Liggett, Mass., 47 A.L.R. 155, under III. (f) thereof, where the rule is stated that a presumption arises or at least the jury may infer negligence on the part of defendant by the presence of a foreign substance in a bottled beverage. We quote therefrom: "The presence of a mouse in a bottle of coca cola purchased from a retailer presented a jury question as to the negligence of the bottling company in failing to use due care in seeing to it that the beverage was fit for human consumption, notwithstanding testimony tending to show that the bottling plant was up-to-date and that it was operated in a skilful manner. Coca-Cola Bottling Co. v. Barksdale, 1920, 17 Ala.App. 606, 88 So. 36, judgment for plaintiff affirmed. It was said that the testimony referred to presented a conflict of evidence for the determination of the jury. * * *"

We must bear in mind in this connection the jury findings under issue No. 4 et seq., that the defendant company placed on the market a bottle of Coca Cola containing the foreign substance; that such was negligence and a "proximate cause" of any injuries that appellee may have received.

Concerning appellant's complaint of the language employed in the issue under discussion, in the use of the term "properly inspect," the same can be disposed of by referring to Commercial Standard Ins. Co. v. Shudde, Tex.Civ.App., 76 S.W.2d 561, 564, 565, in which a writ of error was granted and later affirmed by the Supreme Court, no opinion. In this case, the error reviewed was as to the refusal of the trial court to define "proper lookout" in the primary issue, though followed (as in the instant case) by the issue of negligence. Judge Martin there said: "It seems plain to the writer not only that the court here correctly refused to define the term 'proper lookout,' but that his doing so would have furnished the basis for a proper objection by appel-

lee that such definition amounted to giving undue prominence and emphasis to one of the issues of the case in such way as to amount to an intimation from the court that there was some doubt in his mind as to its existence."

See City of Wichita Falls v. Phillips, Tex.Civ.App., 87 S.W.2d 544, 546, where many decisions are cited contra to the above ruling in the Shudde Case, supra; however, the latter holding seems to have the present approval of the Supreme Court.

We do not deem it necessary to review appellant's further assignments, in view of another trial.

Reversed and remanded.