## LOVELESS *v.* BRIDGES.

HOLDEN, J.  Bridges brought an action of trover against Loveless, to recover a certain "certificate of fifteen (15) shares of the capital stock of the Alkahest Lyceum System, a corporation," of which Bridges was president and Loveless was secretary and treasurer. The plaintiff testified, in part, substantially as follows: He sold the 15 shares to L. O. Jones by virtue of a written contract signed by them, reciting

that the former "agrees to sell" to the latter the shares for $2,000 "to be paid as follows: Three hundred ($300.00) dollars cash when stock is transferred, and the balance to be paid from the monthly dividends and at any other intervals that special dividends may be declared on said stock, it being understood that all the earnings of said stock are to go to the first party until the remaining seventeen hundred ($1700) dollars is settled. It is agreed that notes for this stock shall be interest-bearing at the rate of 6% after two years from their date. It is further agreed that the second party agrees to give first party option on buying his stock back in case he should decide at any time to sever his connection with the company." A certificate for the shares was issued and delivered to Jones, who, subsequently to the signing of the contract, agreed to deliver and did deliver to Bridges the certificate to hold as security for the notes given Bridges by Jones in pursuance of the written contract. Bridges subsequently delivered the certificate and notes to Loveless to be kept by him for Bridges. Loveless returned to Bridges the notes, but refused to return the certificate. Loveless testified, in part, that the certificate was delivered to him by Jones, to keep for the latter, and when Bridges asked him why he did not return the certificate, "I said, 'By nature of his written instrument, that belongs to Mr. Jones.' He said, 'No, it belongs to me.' I said, 'How comes that?' He said, 'It is mine until it is paid for.' I said, 'You ought to have it transferred, then, out of Mr. Jones.' I said, 'Mr. Jones gave it to me.'" *Held:*

1. An oral agreement between Jones and Bridges, that the latter should hold the certificate to secure the debt due him by the former, made subsequently to the execution of the written contract, could be proved without violating the rule that parol evidence is inadmissible to add to, take from, or vary a written contract. Civil Code (1910), § 5794.

(a) Nor was such oral agreement invalid for the want of a consideration to support the same.

2. Bridges testified: "When I took those notes, I turned them over to Mr. Loveless. I put the stock with the notes at that time. I held the stock certificate because Jones had absolutely nothing. I knew that at the time. . . I certainly would not have turned the stock over to him without some collateral, and he had nothing else to give. . . This agreement that I was to keep as collateral the stock and notes was made after the stock was issued. We were closing up the day's work. We had been working on that business most of the day. I think it was early in the afternoon when we finished. Finally the contract was signed; then we took the matter up about the notes, and we agreed that I should hold the stock with the notes. . . Mr. Jones delivered the stock back to me when he gave me the notes. I put the stock and notes together and turned them over to Mr. Loveless, to put in the safe. . . I know this, the contract had been made after talking to Mr. Jones. I noticed these terms had been fixed, in there, and that he had nothing, and I had to hold the stock, as the only way I could get anything out of him." *Held,* that this testimony was not subject to the objection that it was irrelevant and incompetent, nor on the ground that, "there being a written contract of sale for the stock in question, such

testimony was an attempt to vary by parol the terms thereof and to qualify or make additions to the same."

3. The following testimony of Bridges: "No part of the purchase-money of the stock has ever been paid except the three hundred dollars credit which I allowed," was not inadmissible on the ground that it "was irrelevant because the fact that the stock had not been paid for in full would not affect the title thereto nor prevent same from passing into Jones.' Bridges contended, and offered testimony to show, that the certificate was delivered by Jones to him to secure the balance of the purchase-money of $1,700, and that it was delivered by Bridges to Loveless for safe-keeping; it was, therefore, competent for Bridges to show that the debt to secure which the certificate was pledged had not been paid.

4. If there was an agreement between Jones and Bridges that the latter should hold the certificate to secure a debt due him by the former, and if Jones, for the purpose of securing such debt, delivered the certificate to Bridges and the latter delivered it to Loveless for safe-keeping, Loveless could not defeat a recovery of the certificate by Bridges on the ground that there was no written assignment of the certificate by Jones to Bridges. Civil Code (1910), § 3584.

5. No error requiring a new trial appears in the record, and the evidence was sufficient to authorize the verdict rendered.

Judgment affirmed. All the Justices concur.
APRIL 13, 1911. REHEARING DENIED MAY 12, 1911.

Trover. Before Judge Bell. Fulton superior court. August 25, 1910.

*Hines & Jordan,* for plaintiff in error.

*Napier, Wright & Cox* and *Jesse M. Wood,* contra.